Robbie Dean HARRIS et al.

v.

UNITED STATES of America.

Marilyn R. COX et al.

v.

UNITED STATES of America.

Civ. A. Nos. 7–566, 7–567.

United States District Court,
N. D. Texas,
Wichita Falls Division.

Nov. 19, 1971.

Jack Banner, Wichita Falls, Tex., for plaintiffs.

Phil Silverman, Justice Department, Washington, D. C., and Ken Mighell, Asst. U. S. Dist. Atty., Dallas, Tex., for defendant.

HUGHES, District Judge.

## FINDINGS OF FACT

1. This is an action brought under the Federal Tort Claims Act for the death of George B. Cox and Donald J. Harris on October 7, 1968. Cox and Harris were guest passengers in a Cessna N8225U aircraft when it attempted a landing at the airport at Hot Springs, Arkansas on such date. The plane was piloted by Frank Stewart and owned by Larry Robinson, both of whom were killed in the crash.

2. That a claim was timely filed with the appropriate Federal Agency; final Administrative action was taken thereon and this suit timely filed in accord with 28 U.S.C. Sec. 2675, giving this Court jurisdiction of this action.

3. The plane struck a high voltage electrical transmission line located 697 feet from the southwest end of Runway 5 of the airport in question.

4. Runway 5 of Memorial Field, Hot Springs, Arkansas extended from the southwest to the northeast 6,100 feet in length, the southwest 1,100 feet of which had been completed about three months before the crash of the Cessna.

5. The elevation of the power poles and the lines in question was such that they constituted an obstruction or haz-

ard under the provisions of Part 77 of the Federal Aviation Regulations. The poles and lines in question were unmarked and were not plainly visible.

6. In extending Runway 5 1,100 feet to the southwest, it was necessary to build up and elevate the terrain. The surrounding terrain goes into a dip to the southwest and then a rise. Such terrain produces a visual or an optical illusion that causes a person flying an airplane approaching from the southwest to lose his proper sense of height in relation to various physical structures and the runway itself.

7. The obstruction of the poles and lines in question was well known to the controllers of the Hot Springs airport, and particularly Leo O. Woolever, the controller on duty October 7, 1968. The optical illusion produced by the terrain should, in the exercise of ordinary care, have been known to the controllers prior to October 7, 1968.

8. The location of the poles and lines in question were not noted or marked on any obstruction chart published by the United States Government, nor were they called to the attention of airmen by any publication of the United States Government prior to October 7, 1968.

9. Normally at the Hot Springs airport prior to October 7, 1968, there were two controllers on duty between the hours of 8:00 a. m. and 6:00 p. m. There were an average of 100 arrivals and departures per day, approximately 80 between the hours of 8:00 a. m. and 6:00 p. m. In addition to the normal traffic on October 7, 1968, there was an Air National Guard convention at Hot Springs, and at the time of the crash, 10 Government aircraft were parked along the taxi ramps.

10. On October 7, 1968, between the hours of 4:00 p. m. and 6:00 p. m., two air traffic controllers, Leo O. Woolever and Charles Van Pelt were scheduled to be on duty. Woolever was also acting supervisor of the control tower in the absence, on vacation leave, of the airport control tower supervisor.

11. At 4:30 p. m., Woolever gave permission to Van Pelt to take one hour of leave to pick up his children at school. He was absent from duty as an air traffic controller in the Hot Springs tower from 4:30 p. m. to 5:35 p. m., during which time Woolever was the only controller, and was working the positions local control, flight data, ground control, and approach control.

12. The pilot of the Cessna N8225U contacted the Hot Springs air control tower by radio.

13. The pilot of the Cessna N8225U was not familiar with the area around Hot Springs, nor the airport. As he approached the airport, he was confused as to his position with reference to the airport.

14. From the transmissions received from the pilot of the Cessna, the controller Woolever realized that the pilot was not acquainted with the area, or the airport, and undecided as to his position.

15. Woolever first saw the Cessna 2½ miles southwest of the airport, and at that time knew the airport conditions were not known to the pilot.

16. The controller next saw the Cessna at a one-half mile distance, at which time, he noticed it had descended below the normal height of approach.

17. Woolever did not continue to observe the Cessna. He called the Flight Service Station in Pine Bluff to close a flight plan for an Army plane, 18086, which conversation consumed 44 seconds of time immediately prior to the crash, which occurred at 5:00 p. m. and 32 seconds.

18. At 44 seconds before the crash, the Cessna was 4026.4 feet from the power line into which he crashed, at which time Woolever was talking to Pine Bluff about the flight plan of Army 18086.

19. At 10 seconds before the crash, the Cessna was 1,056 feet from the power line into which it crashed.

20. At any point in time up to 5 seconds before striking the power line, the

aircraft Cessna N8225U had the mechanical capacity to have gained sufficient altitude so as to have avoided the lines in question.

21. During the 44 seconds prior to the crash, Woolever had sufficient time to have warned the pilot of Cessna N8225U of the obstruction of the power poles and lines, and that the pilot was flying below normal.

22. Had controller Woolever watched or observed the Cessna aircraft during the time interval in which it was traveling the distance from 4,026.4 feet to 1,046 feet from the power lines, he would have observed such aircraft fly at a progressively lower altitude and thus be far lower than a normal approach for landing.

23. Controller Woolever was negligent in not continuing to observe the Cessna, and in failing to warn its pilot of the obstruction and of his flying below normal.

24. Such negligence of Woolever was the sole proximate cause of the crash in question, and the deaths of Cox and Harris.

25. There is no evidence that the pilot of the Cessna knew of the obstruction of the poles and wires at the Hot Springs airport, or of the optical illusion produced by the terrain at the end of Runway 5. These facts were material to the safe operation of the Cessna.

26. There is no evidence of negligence on the part of the pilot of Cessna N8225U.

27. Directly resulting from the death of George B. Cox, I find damages for loss of financial support, services, companionship, and mental anguish as follows:

| Marilyn R. Cox | $300,000.00 |
| Travis Cox | 45,000.00 |
| Virginia Cox | 275,000.00 |

28. Directly resulting from the death of Donald J. Harris, I find damages for loss of financial support, services, companionship, and mental anguish as follows:

| Robbie Dean Harris | $500,000.00 |
| Donald J. Harris, Jr. | 25,000.00 |
| Kathryn Harris | 20,000.00 |
| James Harris | 30,000.00 |
| Stephen Harris | 35,000.00 |

29. I find the reasonable cost of burial and funeral arrangements for George B. Cox was $3,439.85, and for Donald J. Harris was $2,024.35.

## CONCLUSIONS OF LAW

1. There can be no imputation to George B. Cox and Donald J. Harris of any other parties' acts or omissions.

2. Before a pilot can be held legally responsible for the movement of his aircraft, he must know or be held to have known those facts which were then material to its safe operation.

3. The air traffic controller, whether or not required by the Manuals, must warn of dangers reasonably apparent to him, but not apparent, in the exercise of due care, to the pilot.

4. The United States having assumed the responsibility of operating the air traffic control at the Hot Springs airport must meet its responsibility according to the standard of reasonable care. This duty is not limited by the letter of its own regulations, policies, or manuals.

5. It is the duty of the air traffic controller at an airport to use due diligence to continue to observe a plane when he knows the pilot is not familiar with the area around the airport, and is unsure of his location.

6. It is the duty of the air traffic controller at an airport to use due diligence to warn a pilot of obstructions and that he is dropping his plane below normal when he knows the pilot is not familiar with the area and has observed that he is dropping below normal.

7. Liability of the United States is established by showing the air traffic controller located at the Hot Springs airport was guilty of negligence which was the sole proximate cause of

the crash and resulting deaths of George B. Cox and Donald J. Harris.

8. Marilyn R. Cox, as Independent Executrix of the Estate of George B. Cox, is entitled to recover the sum of $3,439.85.

9. Robbie Dean Harris, as Independent Executrix of the Estate of Donald J. Harris, is entitled to recover the sum of $2,024.35.

10. The City National Bank of Wichita Falls, as Guardian of the minor children of Donald J. Harris and Robbie Dean Harris, is entitled to recover the sum of $110,000.00 to be divided as follows:

| | |
|---|---|
| Kathryn Harris | $20,000.00 |
| Donald J. Harris, Jr. | 25,000.00 |
| James Harris | 30,000,00 |
| Stephen Harris | 35,000.00 |

11. The individual plaintiffs are entitled to recover as follows:

| | |
|---|---|
| Marilyn R. Cox | $300,000.00 |
| Travis Cox | 45,000.00 |
| Virginia Cox | 275,000.00 |
| Robbie Dean Harris | 500,000.00 |